## LORETZ v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. January 12, 1912.)

1. MUNICIPAL CORPORATIONS (§ 770*)—DEFECT IN STREET—ICE.

A city contractor, under a permit issued by the city, and with the supervision of the city's water department, used an engine connecting with a city hydrant, and discharged a large quantity of water upon the surface of the street, which froze and accumulated by thin layers until the street was filled with ice, which was slippery and uneven. *Held*, that the ice constituted a defect in the street.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1626; Dec. Dig. § 770.*]

2. MUNICIPAL CORPORATIONS (§ 819*)—DEFECT IN STREET—EVIDENCE—NOTICE.

Evidence, in an action for injuries to a horse from a defect in a street, *held* to show that the city had constructive notice of the defect.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1739–1743; Dec. Dig. § 819.*]

3. MUNICIPAL CORPORATIONS (§ 788*)—DEFECT IN STREET—NOTICE.

Where a city has notice of an obstruction in a street made under its permit from the beginning until its removal, its duty of inspection was continuous, and it was not entitled to notice of its condition.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1641–1643; Dec. Dig. § 788.*]

4. MUNICIPAL CORPORATIONS (§ 803*)—DEFECT IN STREET—ICE—CONTRIBUTORY NEGLIGENCE.

An experienced driver, driving a horse at a walk, at a time when the light was so that he could see his way upon a street, where there was no warning or signal of obstruction or danger, but the surface of which was covered with slippery and uneven ice on which the horse, which had been shod the day before, slipped and was injured, was not guilty of contributory negligence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1673, 1682; Dec. Dig. § 803.*]

Appeal from Municipal Court, Borough of Brooklyn, Sixth District.

Action by Albert J. Loretz against the City of New York. From a judgment for defendant, plaintiff appeals. Reversed, and new trial ordered.

Argued before JENKS, P. J., and BURR, THOMAS, WOODWARD, and RICH, JJ.

A. Oscar Bernstien (Fred G. H. Strohsall, on the brief), for appellant.

James D. Bell and Frank Julian Price, for respondent.

JENKS, P. J. [1] This is plaintiff's appeal from a judgment of the Municipal Court that gives judgment for the defendant on the merits dismissing the complaint. The action is for negligence to recover damages for injury to a horse. Shortly after 5 p. m. on February 1, 1910, the plaintiff's servant drove the plaintiff's horse, drawing a wagon, into a city street, where the horse stepped upon a ridge of ice, slipped, fell, and received such injuries that he was shot for hu-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

.mane reasons. Theretofore contractors with the defendant had set up a sounding plant in this street for the purpose of finding rock bottom. The work of sounding involved the use of an engine connected by pipe or hose with a hydrant on that block. The contractors worked under a permit issued by the city, with the supervision of the city's water department. In the work 20 gallons of water a minute was drawn from the hydrant, of which 85 or 90 per centum was discharged onto the surface of the street and suffered to flow down it. The work began on January 4, 1910, and was continued steadily for 16 hours a day until January 22, 1910. The evidence for the plaintiff is that, soon after the work was begun, the water in the street froze into thin layers of ice, upon which were imposed successive layers as the water was discharged from day to day. The street became a mass of ice from curb to curb. The ice at some points was even with the curbs, and at others the water had run over the curbs and frozen upon the sidewalks. The block in question at the time of the accident was thick with ice, and was very slippery and uneven. The mean temperature of that January was 29.32 degrees Fahrenheit. The case was tried before the court without a jury. At the close of the evidence the plaintiff moved for judgment, and the defendant for a dismissal.

I think that the judgment should be reversed, and that a new trial should be ordered. The case is not in the category of the so-called "snow and ice cases," in that the cause of this accumulation was not natural but artificial. Allison v. Village of Middletown, 101 N. Y. 667, 5 N. E. 334; Corbett v. City of Troy (General Term, Third Department) 53 Hun, 228, 6 N. Y. Supp. 381; Thuringer v. N. Y. C. & H. R. R. R. Co., 71 Hun, 526, 24 N. Y. Supp. 1087; Gillrie v. City of Lockport, 122 N. Y. 403, 25 N. E. 357; Stone v. Inhabitants of Hubbardston, 100 Mass. 49; 3 Abbott's Municipal Corporations, p. 2298. Lichtenstein v. Mayor, 159 N. Y. 500, 54 N. E. 67, cited by the learned counsel for the respondent, may be discriminated, in that the accumulation of snow and ice was that which originally had fallen or formed naturally, while the ice in the case at bar was, as I have pointed out, formed artificially. And such, too, is the line of discrimination to be drawn against the application of Crawford v. City of New York, 68 App. Div. 107, 74 N. Y. Supp. 261, also cited by the learned counsel. Van Brunt, P. J., to whose concurring opinion we are particularly cited, denies liability where the streets "are simply rendered slippery and uneven because of the action of the elements." The city, under its permit and by work done under its supervision, suffered its contractor to place an obstacle to travel in its public street. In Stone v. Inhabitants of Hubbardston, supra, Gray, J., for the court, says:

"But if ice, by reason of constant or repeated flowing of water, trampling of passengers, or any other cause assumes such a shape as to form an obstacle to travel, the fact that it is also slippery does not make it the less a defect in the highway."

[2] Aside from the participation of the city, there is evidence sufficient to justify a finding of constructive notice, and there is testi-

mony of actual notice under the rule of Rehberg v. Mayor, 91 N. Y. 137, 43 Am. Rep. 657.

[3] If the city had notice of the original obstruction which was made under its permit, until the obstruction was removed its duty of inspection was continuous, "and it is entitled to no notice of its condition." Tabor v. City of Buffalo, 136 App. Div. at 261, 120 N. Y. Supp. 1091, and authorities cited.

[4] I think that the plaintiff fulfilled his obligation of due care. He was an experienced driver. He had first passed along other blocks of that street where travel was safe. There was no warning or signal of obstruction or of danger in this particular block. He drove the horse at a walk, and there is no proof that points to any lack of care in management. Although the day was ending, he could see his way. It is true that the plaintiff noticed it was in bad condition—"it was kind of dirty, and you could not tell it from asphalt." Possibly the comparative darkness dimmed his sight, yet he would have had the right to drive carefully even in the darkness of night with reliance upon the belief that the city had performed its duty and that the street was not unsafe. Dillon on Municipal Corporations (5th Ed.) vol. 4, § 1698. He drove on this block but 75 feet before the accident, and in that space his horse had not slipped. The horse had been shod but the day before.

The judgment must be reversed, and a new trial must be ordered; costs to abide the event. All concur.